**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| MELANIE JOSEPH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

COMES NOW Plaintiff, Melanie Joseph, and for her claims and causes of action against Defendant, The Lincoln National Life Insurance Company, states as follows:

## PARTIES

1. Melanie Joseph ("Joseph") is a resident and citizen of the State of Missouri

2. Defendant Lincoln National Life Insurance Company ("Lincoln") is an out-of-state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Commerce and Insurance is authorized to accept service of process on behalf of Lincoln.

## JURISDICTION AND VENUE

3. Joseph brings her claim pursuant to the Employment Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in this district under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

9. Trial is to be held in Kansas City, Missouri.

## STATEMENTS OF FACT

10. Beginning November 10, 2019, Apple Inc. employed Joseph as a Real Estate & Development Manager.

11. Apple Inc. sponsored a group long-term disability ("LTD") benefits plan ("Plan") for its participating employees.

12. The Plan constitutes employee welfare benefit plans as defined by 29 U.S.C. § 1002(1).

13. The Plan offered disability benefits to qualifying Apple Inc. employee Plan participants.

14. At all relevant times, Joseph has been a participant and covered person under the terms of the Plan.

15. Apple Inc. is the administrator of the Plan.

16. The Plan's disability provisions are insured by a policy written by Lincoln.

17. Apple Inc. delegated or attempted to delegate the function of issuing LTD claim determinations to Lincoln.

18. Apple Inc. and Lincoln entered into an administrative services contract through which Apple Inc. paid Lincoln for acting as claims administrator.

19. The Plan and Policy articulate the conditions under which a Plan participant is entitled to LTD benefits.

20. The LTD Policy defines the term "Disabled" as follows:

> ***"Disability"*** *or* ***"Disabled"*** *means:*
>
> *i. that during the Elimination Period and the next 12 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way; and*
>
> *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the Covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity.*

21. The LTD Policy defines the term "Material Duties" as follows:

> ***"Substantial and Material Acts"*** *means acts that are normally required for the performance of the Covered Person's Own Occupation and cannot be reasonably omitted or modified.*

22. The LTD Policy defines the term "Own Occupation" as follows:

> ***"Own Occupation"*** *means the Covered Person's occupation that he was performing when his Disability or Partial Disability began.*

23. During her employment, Joseph was an "active, full-time employee working in the United States," as required under the Plan.

24. During her employment, Joseph began to develop severe symptoms associated with her thyroid disorders, fibromyalgia, Lyme disease, cervical spondylosis, and deep vein

thrombosis, including severe fatigue, joint pain, migraine headaches, and chronic neck, back pain, and foot pain.

25. These conditions progressed and eventually rendered her incapable of performing the material duties of her job on a full-time, competitive basis.

26. Joseph advised Apple Inc. on January 2, 2024, that she would be ceasing work to focus on her health on the advice of her treating physicians.

27. Joseph made a claim for Short-Term Disability benefits through Apple Inc.'s STD benefits administrator, Sedgwick Claims Management Services ("Sedgewick").

28. Sedgwick properly concluded that Joseph's medically supported limitations prevented her from performing the duties of her job and approved Joseph's claim for STD benefits beginning January 1, 2024.

29. Sedgwick paid Joseph STD benefits through the maximum benefit date in July 2024.

30. In May 2024, Joseph made a claim for LTD benefits through Lincoln.

31. On July 1, 2024, Lincoln wrote Joseph to inform her that it would not be approving her claim for benefits.

32. In its letter, Lincoln stated that there was insufficient evidence that would warrant restrictions or limitations as of January 1, 2024, and quoted the report of the internal medicine physician who reviewed Joseph's claim, Dr. Paul Stander.

33. On October 17, 2024, Joseph requested her claim file from Lincoln. The claim file contained, among other items, the report of Dr. Stander.

34. Dr. Stander's report reflects that he focused his review on Joseph's hypothyroidism, ignoring her diagnosis of fibromyalgia. Dr. Stander stated that because Joseph had not

been confirmed to have "multiple trigger points in soft tissue areas of the body," he would not credit her diagnosis of fibromyalgia.

35. Despite having opinions that were contradictory to the opinions of Joseph's treating providers, Dr. Stander determined that "it is not necessary to contact [Joseph's treating] physician at this time."

36. Dr. Stander's conclusions ignore the findings of Joseph's treating physicians and conflict with the modern understanding of fibromyalgia, which does not require any findings of trigger point sensitivities in order to reliably make a fibromyalgia diagnosis. *See, e.g.,* https://www.mayoclinic.org/diseases-conditions/fibromyalgia/diagnosis-treatment/drc-20354785 ("Newer guidelines from the American College of Rheumatology don't require a tender point exam. Instead, the main factor needed for a fibromyalgia diagnosis is widespread pain throughout your body for at least three months.")

37. Dr. Stander made no mention of Joseph's significant cervical spondylosis in his report, despite Joseph's medical records containing many references to her spinal issues and associated neck pain.

38. The claim file reflects that Lincoln did not conduct a vocational/occupational analysis in determining that Joseph can perform the duties of her occupation.

39. The claim file reflects that Lincoln did not even possess a job description detailing the duties of Joseph's work at Apple. Inc.

40. Joseph appealed Lincoln's denial on December 16, 2024, and supplied Lincoln with additional proof of her disabled status.

41. On January 9, 2025. Lincoln sent Joseph a letter stating that it was invoking its right to conduct an Independent Medical Examination of Joseph, which was scheduled for

February 18, 2025, and would be conducted by Dr. Daryl L. Thomas, a medical reviewer for the Exam Coordinators Network, in Kansas City, Missouri.

42. Despite a large snowstorm hitting the Kansas City-area on the morning of February 18th, 2025, Joseph attended the independent medical examination as scheduled.

43. Following the examination, Dr. Thomas generated a report, which was shared with Joseph on February 26th, 2025. In the same communication, Lincoln also shared an Occupational Analysis recently conducted by Lincoln's vocational assessor.

44. Like the report of Dr. Stander, Dr. Thomas's report reflects a misplaced emphasis on the presence or absence of tender trigger points, which are not necessary to make a diagnosis of fibromyalgia.

45. Dr. Thomas stated in his report that because there was "no evidence of trigger point tenderness or muscle weakness that would correlate with any medical or functional impairment that would prevent her from doing [activities of daily living,]" her exam did not support impairment.

46. However, Dr. Thomas stated in his report that Joseph's wrists exhibited signs of tenderness on exam, which provides evidence of trigger point tenderness that would correlate with medical or functional impairment and contradicts other aspects of Dr. Thomas's report.

47. In focusing on the existence of trigger points and muscle weakness, Dr. Thomas ignores the role played by Joseph's chronic shoulder, arm, and wrist pain, which Dr. Thomas noted on exam yet failed to address as a potential source of impairment.

48. Dr. Thomas acknowledged that Joseph experiences what has been described as “severe migraines,” and stated that these headaches “certainly [have] the potential of requiring absence from work.”

49. However, Dr. Thomas concluded without any analysis that “on an overall continued basis, [Joseph’s migraines] will not pose any ongoing [restrictions].” Dr. Thomas made no attempt to reconcile this finding with his previous statements about the severity of her headaches.

50. In addition to providing Dr. Thomas with Joseph’s medical records, Lincoln also provided Dr. Thomas with the previous reports generated by Lincoln’s own internal medical reviewers, thereby preventing his ability to come to a truly independent and uninfluenced medical judgment regarding Joseph’s health.

51. The table-of-contents for the information supplied to Dr. Thomas indicates that Lincoln did not intend to supply Dr. Thomas with these prior reports. Next to the content labeled “Prior Reviews or Nurse Memo,” reads the statement “Do Not Include.”

Table of Contents - Melanie Joseph 28498301


| | |
|---|---|
| Job Description | 2 |
| Release of Information for SS | 9 |
| Claim Information | 10 |
| Signed Medical Authorization | 31 |
| Disability Questionnaires and Application for Benefits | 33 |
| Medical Records | 40 |
| Prior Reviews or Nurse Memo – Do Not Include | 140 |


52. Despite the indication that these prior reviews should not have been provided to Dr. Thomas, these reviews were ultimately provided to Dr. Thomas and Dr. Thomas summarized them at-length in his report.

53. The occupational analysis provided to Joseph on February 26th reflects that Lincoln did not adequately consider the extraordinary temporal demands of Joseph's work at Apple Inc. in attempting to identify Joseph's occupation.

54. The role of Real Estate & Development Manager normally requires working 10 to 12 hours per day, 5 to 7 days a week. This requirement cannot be reasonably omitted or modified, and Lincoln was made aware of this requirement during Joseph's initial application for benefits.

55. Lincoln determined that the combined occupation of Program Manager (DOT#189.167-030)/Facility Planner (DOT#019.261-018) is the occupation with demands most comparable to the demands of Joseph's work as a Real Estate & Development Manager at Apple Inc.

56. The DOT listings for the occupations of Program Manager and Facility Planner do not include any temporal demands.

57. Lincoln's occupational analysis reflects that it did not consider any temporal demands in defining Joseph's occupation as Program Manager/Facility Planner or in evaluating her ability to perform that combined occupation.

58. Because Joseph is claiming to have gone out work in large part due to the fatigue associated with Fibromyalgia and her other conditions, proper consideration of the temporal demands of her work is crucial to ensuring that her disabled status is adequately assessed.

59. Lincoln was again informed on March 19, 2025, that Joseph's occupation was significantly more temporally demanding than was being considered by Lincoln.

60. However, Lincoln refused to alter its analysis to more-closely align with the demands of the work Joseph performed at Apple Inc.

61. Because Lincoln evaluated Joseph's ability to work using an occupation that does not have temporal demands that correspond with the work performed by Joseph when she became disabled, Lincoln failed to determine whether Joseph was able or unable to perform the duties of her "own occupation" as defined by the Plan.

62. On May 10, 2025, Lincoln upheld its denial of benefits.

63. Joseph requested her claim file from Lincoln on May 15, 2025.

64. Lincoln provided Joseph her claim file on July 3, 2025.

65. The claim file provided by Lincoln contains internal claim notes indicating that, prior to informing Joseph of her denial, Joseph's claim was provided to Lincoln employees Kayla Bick and Mary Avrett for review. However, documentation of these reviews, including any internal communications between these individuals and other Lincoln employees, was absent from the claim file.

66. Joseph has exhausted her administrative remedies and Lincoln refuses to take further action in connection with her claims.

67. At all times, Joseph has remained disabled as defined under the Plan.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

68. Joseph realleges the preceding paragraphs as if fully set forth herein.

69. Joseph is entitled to all unpaid and accrued LTD benefits, as Lincoln:

a. Made an unfavorable decision without substantial evidence;

b. Failed to properly consider Joseph's medical impairments and resulting limitations; and

c. Issued an unfavorable decision that was arbitrary and capricious.

70. Lincoln has not satisfied its obligation to pay Joseph's LTD benefits.

71. Lincoln denied LTD benefits when the applicable medical record supports upholding LTD benefits.

72. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Joseph prays for judgment against Lincoln for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

73. Joseph realleges the preceding paragraphs as if fully set forth herein.

74. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

75. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

> "a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

76. Lincoln, the Plan's designated claims administrator, is a fiduciary.

77. Lincoln participated in and benefitted from the Plan as previously indicated.

78. Lincoln's claims management practices are motivated by financial incentives in its administrative services agreement with HCA.

79. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Lincoln operates under an inherent conflict of interest.

80. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

81. Lincoln breached its fiduciary duty in:

   a. Failing to comply with its internal guidelines and claims handling procedures;

   b. Engaging in a structural conflict of interest by assuming the role of both claims administrator and payor of benefits;

   c. Failing to provide copies of all documents, records, and other information relevant to Joseph's claim for benefits; and

   d. Failing to properly consider competent medical and vocational opinion evidence, and/or failing to specifically explain why it did not agree with such evidence.

82. Lincoln denied Joseph's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

83. Lincoln failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Joseph and the Plan's participants and beneficiaries generally.

84. Lincoln's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

85. Lincoln's violations of regulations alone allow Joseph the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

86. Lincoln's violations of federal regulation also subject its decision to *de novo* review.

87. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Joseph prays for an order that Lincoln retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Lincoln in its fiduciary capacity; for an equitable accounting of benefits that Lincoln has withheld; for the disgorgement of profits enjoyed by Lincoln in withholding benefits; for restitution under a theory of surcharge; for pre-judgment interest on wrongfully denied benefits; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Benjamin Narrell
Benjamin Narrell #79228
Derrick A. Pearce #16752
103 W 26th Ave., Ste. 290
North Kansas City, MO 64116
P: 816.781.4836
F: 816.792.3634
dpearce@burnettdriskill.com
bnarrell@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF